**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOSUE SALGADO-PAGÁN**<br><br>**Petitioner**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA**<br><br>**Respondent** | **Civil No. 17-1109 (ADC)**<br>**[Related to Crim. No. 15-162-28 (ADC)]** |

<u>**OPINION AND ORDER**</u>

Petitioner Josue Salgado-Pagán brings a petition and supplemental motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction. **ECF Nos. 1, 2**. The United States filed a response in opposition. **ECF No. 13**. For the reasons that follow, the petition is **DENIED**. **ECF No. 1**.

I.      **Background**

In case number **15-CR-162 (ADC)**, petitioner plead guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 860, 841(a)(1) & 846 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B). **15-CR-162 (ADC), ECF No. 675**. His plea agreement called for a sentence within the guideline range for a total adjusted offense level of 29 but did not specify a criminal history category. **15-CR-162 (ADC), ECF No. 675**. At petitioner's request, the agreement also provided that rather than pursue forfeiture of

petitioner's real property in Kissimmee, Florida ("Kissimmee Property"), the government would seek a money judgment for the amount of the property's purchase price. **15-CR-162 (ADC), ECF No. 675**. The Court found a criminal history category of II, resulting in a guideline range of 97 to 121 months. **15-CR-162 (ADC), ECF No. 1670**. On December 1, 2015, petitioner was sentenced to 97 months imprisonment. **15-CR-162 (ADC), ECF No. 1331**. The judgment also adopted the plea agreement's provision regarding forfeiture. *Id*.

## II.     Legal Standard

### A.  Involuntary and Unintelligent Guilty Plea

A guilty plea must be voluntary and intelligent. *Parke v. Raley*, 506 U.S. 20, 29 (1992). A guilty plea is unintelligent if the defendant does not receive "real notice of the true nature of the charge against him". *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "[A] guilty plea is involuntary and therefore invalid if it is obtained 'by actual or threatened physical harm or by coercion overbearing the will of the defendant.'" *United States v. Martínez-Molina*, 64 F.3d 719, 732 (1st Cir. 1995) (quoting *Brady v. United States*, 397 U.S. 742, 750 (1970)).

### B.  Ineffective Assistance of Counsel

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement

necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (citations and internal quotation marks omitted).

When an ineffective assistance claim is based on a failure to appeal, the Supreme Court has set forth different standards for deficient performance depending on defendant's conduct. If the defendant "explicitly tells his attorney not to file an appeal," he "plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, if the defendant tells his lawyer to appeal and his lawyer fails to do so, the lawyer has "acted in a manner that is professionally unreasonable." *Id*. "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the question is whether counsel consulted with defendant by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. If counsel consulted with defendant, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. However, if counsel has not consulted with defendant, the Court must look to whether "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) [ ] this particular defendant reasonably demonstrated to counsel that he was interested in

appealing." *Id.* at 480. In either of these circumstances, counsel has a constitutional duty to consult with the defendant.

> [A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id.*

As to the second prong of the Strickland test, prejudice, a "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

### C. *Dean v. United States*

In *Dean v. United States*, the Supreme Court held that a sentencing judge may consider the length of a mandatory minimum sentence when determining the appropriate length of a sentence for a predicate offense that will run consecutively. 137 S. Ct. 1170, 1178 (2017). The defendant in Dean was convicted of predicate offenses, including robbery, in addition to two counts of possessing and aiding and abetting the possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). Id. at 490. 18 U.S.C. § 924(c) called for a mandatory minimum sentence of 30 years.

While the sentencing judge stated that 30 years and one day of incarceration would be "more than sufficient," he believed that the language of 18 U.S.C. § 924(c) precluded such a lenient

sentence. *Id*. at 1175. 19 U.S.C. § 924(c) requires that a mandatory minimum sentence run consecutively to the sentence imposed for the predicate crimes. The sentencing judge erroneously believed that this language meant he could not consider the length of the mandatory minimum sentence when deciding the appropriate length of a consecutive predicate sentence. *Id*. at 1175. Therefore, he imposed a sentence of 400 months. *Id*. The Supreme Court's holding clarified that no such prohibition exists. Neither the Supreme Court or the First Circuit have ruled on whether *Dean* applies retroactively on collateral review.

### III.    Analysis

#### A.  Involuntary and Unintelligent Guilty Plea

Petitioner alleges that his guilty plea is invalid because he did not understand that "by virtue of his plea agreement, his wife lost not only the right to remain in the marital residence, but also her interest in the marital residence." **ECF No. 1**. The "marital residence" referred to is the Kissimmee Property discussed in petitioner's plea agreement.

Petitioner does not allege that he did not have notice of the elements of the crime against him, or that he was coerced into pleading guilty. *Bousley*, 523 U.S. at 618; *Martínez-Molina*, 64 F. 3d at 732. Accordingly, his claim fails to meet the standard for an involuntary or unintelligent guilty plea. Even if petitioner's claim did meet this standard, he is factually incorrect as to the consequences of the plea agreement. The forfeiture provision of the plea agreement, which was adopted by the Court, specifically states that the United States will seek a money judgment for the value of the Kissimmee Property "in lieu of seizure" of the property. **15-CR-162 (ADC), ECF**

**No. 675**. Thus, the plea agreement and judgment have no direct effect on the interests of petitioner's wife in the Kissimmee Property.

### B. Ineffective Assistance of Counsel

#### 1. *Failure to Object to PSR*

Petitioner claims that his counsel rendered ineffective assistance by failing to make three objections to the Presentence Investigation Report ("PSR"). **ECF No. 1**. First, petitioner alleges his counsel failed to object to an erroneous two-level enhancement to his total adjusted offense level. Under United States Sentencing Guideline § 2S1.1(a)(a), the base offense level for money laundering is the offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of §1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined.

The underlying offense in petitioner's case was intent to distribute controlled substances, with a stipulated amount of at least 3.5 but less than 5 kilograms of cocaine. **15-CR-162 (ADC), ECF Nos. 675, 914**. Under USSG § 2D1.1(c)(6), this calls for an offense level of 28. As petitioner plead guilty to committing this offense within 1,000 feet of a protected location, **ECF No. 675**, a two-level enhancement was added under USSG § 2D1.1(a)(1). **15-CR-162 (ADC), ECF Nos. 675, 914**. Another two-level increase under § 2S1.1(b)(2)(B) was applied because defendant was convicted under 18 U.S.C. § 1956, which prohibits money laundering, **15-CR-162 (ADC), ECF Nos. 675, 914**; this is the enhancement which petitioner claims was incorrectly applied.

Finally, a three-point reduction was applied for acceptance of responsibility. USSG § 3E1.1(a) and (b). *Id*.

It is worth noting that the calculations in the PSR are essentially identical to those in the plea agreement, and both result in a total offense level of 29. The two-level enhancement for money laundering was properly applied in the PSR and at sentencing and was agreed to by petitioner in his plea agreement. The failure of petitioner's counsel to object to a properly calculated enhancement which was also agreed to in the plea agreement cannot constitute deficient performance.

Petitioner next argues that counsel failed to object to an incorrect calculation of his criminal history score. Specifically, petitioner alleges that his criminal history score was increased on the basis of an offense that occurred when defendant was a juvenile. The PSR, stating that it relies on official court documents, reflects that petitioner was in fact 20 years old at the time of the relevant offense. **15-CR-162 (ADC), ECF No. 914**. Petitioner offers no evidence to the contrary. In the absence of any evidence that the relevant offense did in fact occur when petitioner was a juvenile, the Court finds that counsel's performance was not deficient.

Finally, petitioner argues that counsel's performance was deficient because he "failed to emphasize at sentencing" that petitioner voluntary abandoned a criminal lifestyle in 2010, five years prior to sentencing. **ECF No. 1**. The transcript of the sentencing hearing reflects that counsel did in fact raise this argument. **15-CR-162 (ADC), ECF No. 1570, 13:12-13**. However, the argument is meritless. The stipulation of facts executed as part of the plea agreement reflects

that petitioner began money laundering in approximately 2013, indicating that defendant did not in fact stop committing crimes in 2010. **15-CR-162ADC, ECF No. 675**. As the argument was raised by counsel and is meritless, counsel's performance was not deficient.

        *2.  Failure to Advise as to Appeal*

        Petitioner does not allege that he expressly instructed counsel to file an appeal or not to file an appeal at any time. Accordingly, whether counsel's performance was deficient depends on whether counsel consulted with plaintiff and whether he had a constitutional duty to do so. *Flores-Ortega*, 528 U.S. at 478-80. Petitioner contends that counsel did not consult with him because he failed to "advis[e] the defendant about the advantages and disadvantages of taking an appeal". *Id*. at 477. Specifically, petitioner alleges that his counsel failed to advise him that the following claims or error would be procedurally defaulted if he did not appeal: (1) "his sentence involved an impermissible doub[l]e counting of the money laundering facts," and (2) "the ambiguity contained in the forfeiture provisions of the plea agreement could result in loss of the marital residence." **ECF No. 1**.

        Petitioner does not elaborate on the meaning of "double counting of the money laundering facts". As far as the Court can determine, petitioner is referring to the method for calculating his total offense level. As the Court has already found, the total offense level was correctly calculated, Section III.A.1., *supra*, and the plea agreement could not result in the loss of the marital residence, Section III.B.1. *supra*. Therefore, petitioner has failed to show that he ever requested counsel to appeal or that there was a reasonable issue from which appeal could be

taken. Considering the plea agreement entered by defendant, the Court finds that counsel consulted with petitioner about filing an appeal.

Even assuming, arguendo, that counsel failed to meet the standard for consultation set by *Flores-Ortega*, counsel had a constitutional duty to consult only if "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. As to the first factor, all the circumstances deemed relevant by *Flores-Ortega* point against a finding that a rational defendant would want to appeal in petitioner's case. No non-frivolous grounds for appeal are evident or have been identified by petitioner, and petitioner plead guilty, received the lowest sentence recommended under the plea agreement, and waived his right to appeal. **15-CR-162 (ADC), ECF Nos. 675, 1331**. As to the second factor, petitioner has set forth no facts showing that he demonstrated his interest in appealing to counsel. Accordingly, the Court finds counsel did not violate his duty to consult with petitioner under these circumstances.

As each of petitioner's claims fails at the first step of the Strickland test, the Court need not reach the question of prejudice and finds that petitioner's counsel did not provide ineffective assistance.

*C. United States v. Dean*

In a Supplemental Motion, petitioner argues that he should be resentenced pursuant to the United States Supreme Court's ruling in *Dean v. United States*, 137 S. Ct. 1170 (2017). **ECF No.**

**2**. The Court will not decide whether *Dean* is retroactive on collateral review, as petitioner is plainly not entitled to relief under the decision. Petitioner fundamentally mischaracterizes *Dean*'s holding, believing that it authorizes the Court to modify a sentence "it determines to be excessive from the standpoint of fundamental fairness." **ECF No. 2**. In fact, the holding is much narrower: *Dean* clarifies that judges may consider the length of mandatory minimum sentences in determining the appropriate consecutive sentence for a predicate offense. 137 S. Ct. at 1178.

For multiple reasons, this holding is not applicable to petitioner's case. First, petitioner was not sentenced under 18 U.S.C. § 924(c) or any other statute requiring that a sentence for a predicate offense run consecutively to a mandatory minimum sentence. Second, defendant was not subject to any consecutive sentences; his sentence for each of the two counts run concurrently. Third, there is no indication that the sentencing judge believed that petitioner's sentence of 97 months was greater than necessary. **15-CR-162 (ADC), ECF No. 1670, 15:13-17** (The Court has "looked at all the personal circumstances that appear delineated in the PSI. And we of course consider the fact that he participated in this conspiracy as a drug processor to the drug trafficking organization, while at the same time laundering unlawful funds."); **11:20-21** ("I am not going to make any Order saying that this is over-represented. This is not true.").

Accordingly, the petitioner is not entitled to relief under *Dean*.

### IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the

applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. § 2255. To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner made no such showing here. Therefore, a COA is **DENIED**.

**V.    Conclusion**

Petitioner's Motion to Set Aside, Vacate, or Correct Sentence is **DENIED** and the Court **DECLINES** to issue a certificate of appealability. The Clerk of the Court shall enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**